HENRY C. LOUDENSLAGER, appellant,

*v.*

WOODBURY HEIGHTS LAND COMPANY, respondent.

[Filed June 19th, 1899.]

1. Equity forbids any person standing in a fiduciary position from making any profit at the expense of the party whose interest he is bound to protect without making a full disclosure of his relationship in the transaction.

2. Where a profit has been made without such disclosure the exact measure of the relief in equity is that the defendant account for the profit that he had made.

3. R. employed L. to obtain options for R. for the purchase of certain lands, L.'s compensation to be one-half of the profit realized upon their sale. R., with L. and others, organized a company to buy the lands of R. L. did not disclose to the company his agreement for compensation, and R. did not impart to it the prices named in his options. The company purchased the lands at a profit to R.—*Held*, in a suit against L., that he must account for the profit he had made, and that a decree against him for the whole profit of the transaction was erroneous.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *Woodbury Heights Land Co.* v. *Loudenslager, 10 Dick. Ch. Rep. 78.*

*Mr. Samuel H. Grey,* for the appellant.

*Mr. Howard M. Cooper* and *Mr. David J. Pancoast,* for the respondent.

The opinion of the court was delivered by

GARRISON, J.

For an extended statement of the facts of this case I refer to the opinion of Vice-Chancellor Pitney. *10 Dick. Ch. Rep. 78.*

I quite agree with the learned vice-chancellor that the case made by the bill was in nowise sustained by the proofs. The

Loudenslager v. Woodbury Heights Land Co.

case made by the bill was that Henry C. Loudenslager, the sole defendant,

"conceived the idea and concocted the plan, for his own benefit and advantage, of acquiring an option or right to purchase a large tract of land near Woodbury in [Gloucester] county, and forming a company among his friends and associates to purchase said lands from him at a price greatly more than that which he should pay therefor, thereby making a large pecuniary gain for himself."

That, in furtherance of such project, said Loudenslager promoted the complainant corporation and, in further pursuance of his fraudulent design, had conveyed to himself the said lands, aggregating about four hundred acres, which he conveyed to the complainant company at a price greatly in excess of that paid by him for said lands, fraudulently receiving and retaining the said excess. Had this state of facts been proved, there could have been no question as to the propriety of a decree that required Loudenslager to account for and pay over the difference between the price he received from the complainant for said lands and that which he paid to the owners therefor. The facts proved, however, were of a totally different nature and lead, in my opinion, to a radical modification of the decree rendered in the court of chancery.

Briefly stated, the case as made by the testimony was this : One Joseph B. Roe, who was the owner of a farm near Woodbury, being in embarrassed circumstances and desirous to sell his lands to the best advantage, conceived the idea of obtaining options for the purchase of several adjoining tracts, rightly deeming that thereby the market value of all the lands embraced in this comprehensive scheme would be enhanced. Being able to obtain some but not all of the required options, Roe called upon Henry C. Loudenslager, then county clerk, to aid him in procuring those options that he had been unable to obtain, agreeing to divide with Loudenslager whatever profit might be made by Roe out of the sale of the entire tract represented by said options. Roe's idea at first was to sell the tract to a charitable school then unlocated, but this fell through. He then negotiated with one Long, who partly organized a syndi-

Loudenslager *v.* Woodbury Heights Land Co.

cate to buy the lands of Roe. This also fell through. While matters were in this position, and in order to avoid the lien of a judgment that had been obtained against him, Roe transferred his options to Loudenslager, to whom also he conveyed his own farm. The complainant company was organized by Roe, Loudenslager and others for the purpose of buying the lands in question, and when a price for the purchase of the lands had been agreed upon they were conveyed to Loudenslager and by him conveyed to the company, the price paid by the company being greater than that which Roe had agreed to pay and which Loudenslager, for him, actually did pay to the owners. For the whole of this difference between what Loudenslager received for Roe and what he paid out for Roe a decree went against him in a suit to which Roe was not a party.

I think this decree is inequitable, and that it can be supported only to the extent that Loudenslager was benefited by his agreement with Roe, viz., for one-half of the profit of Roe's original scheme. As to this profit, and how it was to arise, Loudenslager was under an affirmative duty either to disclose it to his associates or to forego any benefit from it. For his failure to make a full disclosure of this relationship to the transaction equity will decree that he may not make any profit out of the affair; but to go further and to decree that for his failure to impart to his fellows the information he possessed as to the price at which the land could be bought he will be decreed to pay to the corporation a sum of money in excess of his profit, is to impose a punishment, not to provide a remedy. The only circumstances in the case upon which such a decree could be based are that Loudenslager was the holder of the options and the person from whom the company received its title, and to whom it paid the gross price. The vice-chancellor, however, has found—and the fact indubitably appears—that each and all of these circumstances were purely fortuitous, arising solely from Roe's desire to elude an execution, and that Loudenslager was in this respect the mere conduit between Roe and the company. The inequity of holding Loudenslager under these circumstances for a profit not made by him was evidently cogent with the learned vice-

chancellor, for he states the situation as he finds it with great clearness, and then, by what seems to be a *non sequitur*, avoids the logical result.

He says (at *p. 95*): "It was also urged that the circumstances that the title in this case passed through defendant was not a part of the original plan of the defendant and Dr. Roe, but was the result of fortuitous circumstances not connected with the case, and ought not to operate to the prejudice of the defendant. I am inclined to the opinion that the defendant's contention of fact in that respect is correct; but, admitting it to be true, the question still remains, how would the case stand if the conveyances from the outside parties had been made to Dr. Roe and by him to the company, and the suit had been against Dr. Roe and the defendant jointly? In that case it seems to me that, as against the defendant, the complainant's right to recover his share of the profit would be quite as clear, if not clearer, than it is under the present state of the case. He would then, as now, still stand in the position of aiding Dr. Roe in making a secret profit out of the company and dividing it with him, and all while he was acting as a trustee of the company. In short, the essence of the transaction would not be changed."

Upon the state of facts embodied in this citation and the state of the case there outlined, which is in effect to put the matter upon its equitable footing, I am content to rest the view for which I am contending, for in a suit to which Roe and Loudenslager were both defendants, upon its being established that Roe alone held the options and obtained for the company the title to the lands purchased; and received from it the purchase-price, and that Loudenslager was a party solely because of his agreement that Roe should pay him half of the profit as a compensation, Loudenslager could not, in my opinion, be held beyond the profit he made out of the company. The principle running through all the authorities upon this branch of the law rests not upon the imposition of a penalty for concealment, but upon the single ground that one in a fiduciary capacity will not be permitted to retain a profit inequitably obtained. This is the rule and the exact measure of the decree, even in the case

of a trustee who actually uses the company's money with which to make the proposed purchase.

In the case of *Plaquemines Tropical Fruit Co.* v. *Buck, 7 Dick. Ch. Rep. 219,* Vice-Chancellor Green thus states the rule : "If, at the time the actual purchase was made from White, Dr. Buck was a trustee, officer or agent of the company, he cannot be permitted *to make any profit* from the sale to the *company,* * * * and if 'he took a profit without disclosure, he cannot retain the same." And to this effect are all the cases.

Upon the whole I find the clearest and most succinct statement of the law in *Bisp. Pr. Eq. (2 ed.)* § *238 :*

" Equity not only views gifts and contracts which are made or take place between parties occupying a confidential relation, with a jealous eye, but it goes further, and forbids any person standing in a fiduciary position from making any profit in any way at the expense of the party whose interest he is bound to protect, without the fullest and most complete disclosure."

This proposition leads us to an interesting class of cases of which the leading one may be said to be *Tyrrell* v. *Bank of London,* in the house of lords. *10 H. L. Cas. 26.* In that case there was in existence a project to start a new bank in London, and among the projectors of the scheme was the appellant, a member of the bar, whose firm, it had been agreed, were to be employed as the solicitors of the company. The appellant, hearing that a certain lot of ground was for sale, suitable for the purposes of the bank, entered into an agreement with the party who controlled *the option* to buy from the owners, whereby the appellant became interested in *the option.* He then induced his co-projectors to purchase a portion of the property at an advance, he making a certain profit by the transaction. After the arrangement was discovered, a bill in equity was filed by the company for the purpose of obtaining relief; and it was held that the appellant was accountable to the company *for the profit which he had made.* The case is instructive as showing the *exact measure of relief which a court of equity affords in such cases* and the grounds upon which that relief rests.

This case is not only instructive for the manner in which the

court answered the trenchant arguments of Sir Roundell Palmer, afterward Lord Chancellor Selborne, but is of concrete interest because of its almost precise parallelism to the case in hand.

To apply to one incidentally benefited the same rule as that by which a court of equity measures the liability of the principal actor is an extension most favorable to complainant, but how the mere extension of the doctrine can lead to a change in the measure of relief is something I am unable to see.

In all such cases equity considers that the defendant holds what otherwise would have been his profit as a trustee for those from whom it was without disclosure obtained, and the remedial decree is that he refund it to its equitable owners.

To go beyond restitution and decree the actual payment of a sum of money never received by the defendant by way of profit or otherwise is to impose a penalty of a sort and in a fashion unknown to courts of equity, aside from cases of active fraud. In the present case I am strongly impressed with the idea that the erroneous decree was reached because of two circumstances neither of which should have had any influence upon the decision of the case. These are—*first*, the failure of the complainant to make Roe a party to the suit, whereby the entire complexion of the issue was confused if not changed, and *second*, the circumstance that Loudenslager, acting in an alien capacity, manually received the purchase-money, whereas, in fact and in equity, he received only that moiety that, under his agreement with Roe, was his.

That Loudenslager, in this tradition of title, was a mere conduit is not only found as a fact by the vice-chancellor, but that the complainant knew that it was dealing with Roe is also clearly established by the proofs.

To the eye of equity the case will be judged not by its form or by intercurrent and insignificant incidents, but by its substance. Viewed in this light, the omission of Roe as a defendant will not be permitted to increase the liability of Loudenslager, nor will the mere tradition of the price through Loudenslager be confused with the receipt of a profit by him. Finding as I do, and as the vice-chancellor did, that Loudenslager received

but one-half of the profit of the transaction between Roe and the complainant, the remedy of the complainant is that he be not permitted to retain what he got. I shall vote for such modification of the decree as shall make it conform to this result.

*For reversal*—GARRISON, LIPPINCOTT, GUMMERE, BOGERT, HENDRICKSON, NIXON, VREDENBURGH—7.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, COLLINS, ADAMS—5.