The STATE ex rel. BENESCH, FRIEDLANDER,
COPLAN & ARNOFF, L.L.P., Appellee,

v.

CITY OF ROSSFORD et al., Appellants.

[Cite as *State ex rel. Benesch, Friedlander, Coplan & Arnoff,
L.L.P. v. Rossford* (2000), 140 Ohio App.3d 149.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–99–044.

Decided April 21, 2000.

150

*John F. Stock,* for appellee.

*Keith A. Wilkowski,* for appellants.

---

MELVIN L. RESNICK, Judge.

This mandamus action is before the court on appeal from a judgment of the Wood County Court of Common Pleas finding that certain records in the possession of respondents-appellants, the city of Rossford and the Rossford Arena Amphitheater Authority, are public records subject to disclosure under R.C. 149.43. Appellants set forth the following assignment of error:

"The trial court erred in failing to find that the documents in question are protected by the attorney client privilege and are, therefore, excepted from the definition of 'public records' and exempt from disclosure under R.C. § 149.43(A)(1)(p)."

The only evidence offered in this case reveals that the Rossford Arena Amphitheater Authority is a nonprofit corporation organized for the purpose of constructing an arena/amphitheater complex in Rossford, Wood County, Ohio. Financing of the arena/amphitheater may be carried out, in part, through the issuance of bonds. Thus, appellants engaged the services of Chapman & Cutler, a bond law firm based in the state of Illinois, to draft certain bond documents. These documents included a proposed "Trust Indenture," a proposed "Deed of Trust," and a proposed "Assignment of Contracts to Trustee" for circulation to the Rossford Arena and Amphitheater Authority and "financing team members for the proposed bond issue." In addition, Chapman & Cutler formulated, for the bond underwriter, Rossford, and the "financing team members for the proposed bond issue," a "Preliminary Official Statement" in connection with the bond offering. Arthur Andersen L.L.P. prepared a "Market and Financial Analysis of the Multi–Purpose Sports & Entertainment Arena/Amphitheater to be located in Rossford, Wood County, Ohio" for a firm acting as a consultant to the Rossford Economic Growth Corporation.

In April 1999, appellee, Benesch, Friedlander, Coplan & Aronoff, L.L.P., requested inspection of alleged public records related to the creation and operation of the Rossford Economic Growth Corporation and the Rossford Arena Amphitheater Authority. Even though appellants made most of the requested records available to appellee, they refused inspection of the documents related to the issuance of bonds and financial analysis.

On April 29, 1999, appellee filed a petition for writ of mandamus asking the court to order appellants to make available for inspection and copying "any documents related to the issuance of bonds, debt obligations, borrowing of funds,

financing or underwriting activities relating to" the Rossford Arena Amphitheater Authority. Appellee subsequently filed a motion to produce the requested records for an *in camera* inspection by the court. In their memorandum in opposition, appellants argued, among other things, that the attorney-client privilege exempted the preliminary drafts of legal documents related to the issuance of the bonds from disclosure under R.C. 149.43(A)(1)(p).

The common pleas court held a hearing on appellee's motion and decided to (1) allow appellants to file an answer before issuing any type of writ and (2) require appellants to file the disputed documents under seal for an *in camera* inspection. Appellants complied with the court's order.

On May 28, 1999, the trial court granted appellee's petition as to the drafts of bond documents. The court, relying on *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU, AFL–CIO v. Gulyassy* (1995), 107 Ohio App.3d 729, 669 N.E.2d 487, determined that the bond documents "were under consideration for legislative action" and, therefore, constituted public records subject to disclosure. The court reasoned:

"In this case, the particular documents are financial records needed to accomplish bond financing of this particular project. Once these documents were submitted to the public body, [respondent city], they are no longer available under the attorney-client privilege as they become public records under consideration by a public body."

The court held that the market and financial analysis report was prepared for a private firm and, as such, was not a public record.

In their sole assignment of error, appellants assert that the trial court erred in granting appellee's petition for writ of mandamus.

Mandamus is the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426–427, 639 N.E.2d 83, 88–89. A writ of mandamus is warranted when (1) the relator has a clear legal right to the relief prayed for, (2) the respondent is under a clear legal duty to perform the requested act, and (3) the relator has no plain and adequate remedy at law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 51, 451 N.E.2d 225, 227. A relator meets those three requirements when a public office fails to comply with R.C. 149.43(B) requirements for public access to public records. *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377. "R.C. 149.43 must be liberally construed in favor of broad access, with any doubt resolved in favor of disclosure of public records." *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 51–52, 689 N.E.2d 25, 27–28.

A "public record" is any record that is kept by any public office, provided that none of the exceptions delineated in R.C. 149.43(A) apply. The parties to this case do not dispute that the Rossford Arena and Amphitheater Authority is a public office within the meaning of R.C. 149.43(A). Accordingly, its records are subject to the Ohio Public Records Act. See *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1998), 82 Ohio St.3d 578, 579, 697 N.E.2d 210, 212–213; *State ex rel. Strothers v. Wertheim* (1997), 80 Ohio St.3d 155, 156, 684 N.E.2d 1239, 1240–1241. Thus, the sole issue in this case is whether any of the exceptions enumerated in the statute is applicable. In particular, appellants challenge the trial court's judgment by arguing that the bond documents are exempt from disclosure under R.C. 149.43(A)(1)(p), which excepts "records the release of which is prohibited by state or federal law" from disclosure under the Ohio Public Records Act. On the other hand, appellee contends that R.C. 149.43(A) provides no exceptions for "drafts" of public records that document public activity. Appellee further argues that the attorney-client privilege is not applicable to the proposed bond documents because the documents, in their final form, are intended to be disclosed to third parties. Appellee also maintains that the proposed bond documents chronicle governmental activity and have already been disseminated to third parties.

Apparently, in relying on *Gulyassy*, the trial court agreed with appellee's first and second arguments. In *Gulyassy*, the relators sought drafts of proposed amendments to R.C. Chapter 4117, as prepared by the Ohio Office of Collective Bargaining ("OCB") and "circulated the drafts within the office and to other state departments, including to people who were not acting as agents, employees or representatives of OCB." *Id.* at 732–733, 669 N.E.2d at 489. The Franklin County Court of Appeals found that the drafts were records within the meaning of R.C. 149.011(G) because they served to document OCB's policies, operations, and activities in the legislative area and that the drafts were "public records" because they were kept by a public office. *Id.* at 735–738, 669 N.E.2d at 491–493. Nevertheless, the *Gulyassy* court recognized the fact that the attorney-client privilege, an accepted exception to R.C. 149.43 disclosure, was not involved in the case before it. *Id.* at 736, 669 N.E.2d at 491, fn. 3. Thus, we conclude that *Gulyassy* is distinguishable from the case before this court and is not dispositive of the issue of whether the preliminary bond instruments are exempt from disclosure under R.C. 149.43(A)(1)(p).

To reiterate, we start with the premise that the proposed bond instruments[1] are records, as defined in R.C. 149.011(G), kept by a public office, and, absent an

---

1. This includes the "Preliminary Official Statement" prepared by Charles L. Jarik, a partner in the law firm of Chapman and Cutler. In his affidavit, Jarik avers that his firm "is currently

**154**

applicable exemption, are therefore subject to disclosure pursuant to R.C. 149.43(A).

■ In *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 249–250, 643 N.E.2d 126, 129–131, the Ohio Supreme Court determined that records of communications between attorneys and their state government clients pertaining to the attorneys' legal advice are excepted from disclosure under R.C. 149.43(A)(1)(p) because the release of these records is prohibited by state law, specifically, by the attorney-client privilege. Accord *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 383, 700 N.E.2d 12, 16; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 611 N.E.2d 838; *Woodman v. Lakewood* (1988), 44 Ohio App.3d 118, 541 N.E.2d 1084; *State ex rel. Alley v. Couchois* (Sept. 20, 1995), Miami App.No. 94–CA–30, unreported, 1995 WL 559973.

■ The burden of showing that testimony, or documents, allegedly protected under the doctrine of privileged attorney-client communications, is on the party seeking to exclude them. *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 166, 25 OBR 207, 208–209, 495 N.E.2d 918, 920–921, quoting *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 178, 2 O.O.3d 373, 375, 358 N.E.2d 521, 522–523. The attorney-client privilege is based on an intent that confidences shared in the attorney-client relationship are to remain confidential in order that a client may consult freely with an attorney. *State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d at 249, 643 N.E.2d 126, 129–130; *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331, 348–349. Thus, it can be argued that communications made by a client to an attorney with an intention that the facts communicated will eventually become public are not protected by the attorney-client privilege. See *Johndahl v. Columbus Trotting Assn., Inc.* (1956), 104 Ohio App. 118, 4 O.O.2d 179, 147 N.E.2d 101 (note, however, that the communications were made in the presence of a third party in *Johndahl*).

■ In support of the contention that the preliminary bond documents are exempt under the attorney-client privilege, appellants submitted the affidavits of

---

passing on certain legal matters for the bond underwriting company of Stifel, Nicholas & Company Incorporated (the *'Underwriter'*) in connection with a potential bond offering involving the City of Rossford, Ohio (the *'City'*) and the Rossford Arena Amphitheater Authority (the *'RAAA'*)." The affidavit continues: "Based upon confidential communications I have had with the underwriter * * *." It appears from the affidavit that the Preliminary Official Statement was prepared for a private company and is, therefore, not subject to R.C. 149.43. Nevertheless, none of the parties assert that it is not a public record. Thus, this document is included in our consideration of the merits of this appeal.

the attorneys who prepared the documents. David Williams, who prepared the proposed Trust Indenture, Deed of Trust, and Assignment of Contracts avers that the bond documents are based on confidential conversations with the client, Rossford Arena and Amphitheater Authority, and that the documents are "incomplete, preliminary, subject to change and not intended for distribution to the public." Charles Jarik, in his affidavit, vows that the draft preliminary official statement is based on confidential communications with the underwriter and is "incomplete, preliminary, subject to change and not intended for retention" by the city of Rossford or the Rossford Arena and Amphitheater Authority. Our individualized scrutiny of the disputed documents discloses that they consist of the confidential information supplied to the attorneys by their clients coupled with legal advice and opinions, that is, legal proposals as to the substance of the bond instruments, based on that confidential information. Both affidavits state that the circulation of the preliminary documents was limited to the Rossford Arena and Amphitheater Authority, the underwriter, and "financing team members" and would be treated as confidential.[2]

Nonetheless, despite the fact that the affidavits establish that the proposed bond documents contain confidential information and legal advice, appellee asserts, and the trial court agreed, that the attorney-client privilege is inapplicable because the governmental clients in this case intend to release the bond documents, in some form, to members of the public. Since it protects only information that a client intends to remain confidential, appellee concludes that the attorney-client privilege is inapplicable in this situation. See *In re Grand Jury Proceedings* (C.A. 4, 1984), 727 F.2d 1352, 1356; *Johndahl, supra.*

However, appellants cite to federal cases in which the courts determined that preliminary drafts of client communications and legal advice that are intended to be made public are protected by the attorney-client privilege. Only those portions of the drafts, if any, that are made public are not covered by the privilege. See *Schenet v. Anderson* (E.D.Mich.1988), 678 F.Supp. 1280, 1283. See, also, *Natta v. Hogan* (C.A.10, 1968), 392 F.2d 686; *United States Postal Serv. v. Phelps Dodge Refining Corp.* (E.D.N.Y.1994), 852 F.Supp. 156; *Apex Municipal Fund v. N–Group Securities* (S.D.Tex.1993), 841 F.Supp. 1423, 1428,

---

2. Appellee claims that the documents were disseminated to other entities, specifically Wood County and Perrysburg Township. However, appellee failed to offer any evidence to support these claims. Instead, appellee relies on its pleadings and attachments to its pleadings to support this claim. Pleadings are not evidence. *Farmers Prod. Credit Assn. of Ashland v. Stoll* (1987), 37 Ohio App.3d 76, 77, 523 N.E.2d 899, 900, citing *Hocking Valley RR. Co. v. Helber* (1915), 91 Ohio St. 231, 110 N.E. 481, paragraph three of the syllabus. It follows that attachments to pleadings are, therefore, not evidence.

fn. 3 (and the cases cited therein); *Guy v. United Healthcare Corp.* (S.D.Ohio 1993), 154 F.R.D. 172; *United States v. Schlegel* (D.C.Neb.1970), 313 F.Supp. 177. In *Apex* the plaintiffs sought to discover "the underlying documents used to prepare the public offering statements." *Id.* at 1425. In finding that the those parts of the preliminary drafts of these documents that were never published to third persons were privileged, the *Apex* court found that the rule promulgated the goal of a free flow of information between a client and his attorney. *Id.* at 1428. We find the reasoning in *Apex* and its predecessor cases persuasive and hereby adopt the rule set forth therein. Accordingly, the drafts of the bond documents reflecting information provided by appellants and the legal advice flowing from that information are protected by the attorney-client privilege, except to the extent that the information in them actually appears in public documents. *Id.* It is undisputed that, during the time period relevant to this case, the bond instruments existed in preliminary draft form only. Therefore, the proposed "Trust Indenture," proposed "Deed of Trust," proposed "Assignment of Contracts to Trustee," and proposed "Preliminary Official Statement" are exempt from disclosure pursuant to R.C. 149.43(A)(1)(p).

As a result, appellee had no legal right to inspect and copy these documents and appellants had no legal duty to afford appellee that opportunity. Thus, the trial court did err in granting appellee's petition for writ of mandamus, and appellants' sole assignment of error is found well taken. The judgment of the Wood County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal.

*Judgment reversed.*

KNEPPER, P.J., and SHERCK, J., concur.