GIBBS ET AL., APPELLEES, *v.* GERBERICH ET AL., APPELLEES; HEWIT ET AL., APPELLANTS.

[Cite as Gibbs v. Gerberich, 1 Ohio App. 2d 93.]

94

(No. 334—Decided August 12, 1964.)

*Messrs. Garver & Wilson*, for appellees Everett H. Gibbs and Katherine P. Gibbs.

*Mr. L. Thomas Skidmore*, for appellees Robert J. Harris and Marian F. Harris.

*Messrs. Rhonemus, Dalbey & Bradford*, for appellants.

DOYLE, J. This is a suit brought by Everett H. Gibbs and Katherine P. Gibbs against Ruth R. Gerberich and Dwight W. Gerberich, and other defendants whose interests are not herein immediately involved, excepting those of Robert L. Hewit and Beverly Hewit, and Robert J. Harris and Marian F. Harris.

The petition sought an accounting, appointment of a receiver, injunction, and monetary relief. The gravamen, as alleged, was the failure of the Gerberichs (realtors) to account to the Gibbses for the proceeds received from the sale of Gibbs' real property. Other pleadings sought financial relief for the Harrises and the Hewits for money owed to them by the Gerberichs from the sale of their properties.

The defaulting Gerberichs, on several occasions, had com-

mingled, in a bank escrow account, moneys received by them from the sale of property of several of their clients, and due to their withdrawals from the escrow account for purposes other than full payment to their creditor clients, were unable to pay the several persons for whom they had sold real property and received payment.

The litigation, as we meet it in the several appeals from the Common Pleas Court judgment, involves the question: How much of the fund in the hands of the receiver, representing the balance remaining in the escrow account, must be allocated to the financially injured parties? (For convenience, the Gerberichs, the Gibbses, the Hewits and the Harrises, will be referred to as single persons.)

A complete statement of the complicated facts is unnecessary. We will attempt, however, to state sufficient of them to show the legal questions involved. In brief, we must determine whether a certain check cleared The First National Bank of Wadsworth, Ohio, and was, or was not paid within the meaning of the provisions of the Uniform Commercial Code adopted by the Ohio Legislature; and, secondly, what mathematical formula must be used in distributing the amount of the balance in the escrow account (now in the account of the receiver) to the several creditors whose money was deposited at various times in the escrow account.

1. The check.

On July 11, 1962, Gerberich wrote a check on the escrow account in The First National Bank of Wadsworth, Ohio, made payable to Hewit, in the amount of $9,579.76 (the entire balance in the account). The check was in the amount that Gerberich owed Hewit from the proceeds of the sale of Hewit's property. Hewit deposited the check in his personal account in the Medina office of the Security Federal Savings and Loan Association, on July 14, 1962. It was received for payment by The First National Bank of Wadsworth, Ohio, on July 19, 1962, and was charged to the escrow account of Gerberich. On the same day, however, a restraining order issued by the Court of Common Pleas to prevent payment from the escrow account was served upon the bank, and the money (or credit) was thereupon restored to the account by the bank.

In the appeal of Hewit, the first assignment of error relates

96

to this check. It is claimed that: "The check for * * * $9,579.76 was 'paid' by the bank to the Hewits within the meaning of the Uniform Commercial Code of Ohio prior to the receipt of the restraining order and the receiver, therefore, has no right to said funds."

Section 1304.23, Revised Code, is titled, "When items subject to notice, stop-order, legal process, or setoff; order in which items may be charged or certified." The section then, in pertinent parts, provides:

"(A) Any knowledge, notice, or stop-order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend, or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the set-off is exercised after the bank has done any of the following:

"(1) accepted or certified the item;

"(2) paid the item in cash;

"(3) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule, or agreement;

"(4) *completed the process of posting the item* to the indicated account of the drawer, maker, or other person to be charged therewith or otherwise has evidenced by examination of such indicated account and by action its decision to pay the item; or

"(5) * * *

"(B) * * *"

(Emphasis ours.)

The Ohio Code further provides, in Section 1304.19, that:

"(A) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:
"* * *

"(3) *completed the process of posting the item* to the indicated account of the drawer, maker, or other person to be charged therewith; * * *.

"(* * *)"

(Emphasis ours.)

As we view the statutes in their bearing upon the assignment of error, the question for decision appears to be whether the check was paid prior to the bank's notice of the restraining order of the court, and one of the measuring points for determining whether the check was paid is whether the *"process of posting"* was completed.

At no place in the Ohio statutes do we find definitive limits to the "process of posting," as the phrase is used in the Code. As a result, we must give the words their ordinary meaning in the areas of business and banking.

In Section 4-109 of the Uniform Commercial Code—"Bank deposits and collections" (not incorporated in the Ohio Code) —the experts, whose combined talents created the Code, gave the following definition:

"The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:

"(a) verification of any signature;

"(b) ascertaining that sufficient funds are available;

"(c) affixing a 'paid' or other stamp;

"(d) entering a charge or entry to a customer's account;

"(e) correcting or reversing an entry or erroneous action with respect to the item."

It is generally thought, and this court so holds, that the "process of posting" involves two basic elements: (1) a decision to pay, and (2) a recording of the payment.

The procedures followed by banks, however, in determining to pay, and in recording the payment, vary in some instances. In the trial of the instant case, Mr. Linford Irwin, executive vice-president of The First National Bank of Wadsworth, Ohio, was the only witness called in reference to the question of posting, and its relationship to the bank's notice of the restraining order "not to pay." He testified that the check was charged against the escrow account, and from the bank's statement of the account, the check "had been posted to the account."

Question: "And, when you say, 'posted to the account,' what do you mean, Mr. Irwin, would you explain that?"

Answer: "It shows right here, '957976' had been posted to the account, reducing the balance by that amount."

Question: "Which left a balance of what?"

Answer: "Zero."

The bank's officer further testified that the posting was done by a "post-tronic" machine, and that "on checks that overdraw an account," the "checks are posted against the account," and they are then immediately "dropped back out and then corrected;" that the overdrawn checks have been posted, but that they are then "recredited back on the account."

In further testimony, it was developed that checks were not "voided or cancelled" until the "posting run is completed and the day's posting is in balance."

In brief summary, we find that the check had been charged against the Gerberich escrow account undoubtedly prior to the receipt of the restraining order, but that before any decision to pay was made by the bank, the restraining order was served, and the bank then recredited the account. The check had not been perforated or otherwise cancelled.

Under these circumstances, we conclude that the check had been posted, but that the "process of posting" had not been completed, as there is no evidence indicating a decision of the bank to pay. The mere debiting of a customer's account does not per se indicate a decision to pay. The key point in a bank's completion of the "process of posting" is the completion of all of the steps followed in the particular bank's payment procedure. In the instant case, the "posting run" was not completed, and the day's posting had not been found to be in balance prior to the receipt of the restraining order. The check had not been "voided or cancelled," as it would have been if the "process of posting" had been completed. It appears, therefore, that the statutory "process of posting" had not been completed, and, as a consequence, the check had not been paid.

We reject the claim of the appellant Hewit "that the restraining order was of no avail and that this money belongs to Hewits just as though it had been paid to them in cash over the counter."

It is obvious from the foregoing that we affirm that part

of the trial court's judgment holding that this fund belongs to the receiver for the purposes of distribution.

2. Distribution of the part of the assets in the hands of the receiver obtained from the balance in the bank escrow account.

At various times, Gerberich deposited and commingled money in the escrow account rightfully belonging to Gibbs, Harris and Hewit, received from the sale of their respective properties. Before final payment was made by Gerberich to any of them, the account had been so depleted by Gerberich in the transaction of his other business, that at the time of the appointment of the receiver, and Gerberich's real estate business terminated, the balance in the account was insufficient to pay Gerberich's obligation to them.

From the factual situation, the question arises as to which of several formulas should be used in dividing this asset among these three claimants. The Court of Common Pleas, in its judgment, ordered that the receiver should distribute the balance of the funds pro-rata to Gibbs, Harris and Hewit, the distribution to be based on the ratio between the amount due each of them from Gerberich and the total balance in the fund.

To this ruling of the Court of Common Pleas, a second assignment of error by Hewit is presented, as follows:

"If assignment of error No. 1 (the payment of the check) is not well taken, then the trial court erred in not ordering the balance in the escrow account distributed prorata to the claimants thereto upon the basis of their respective monies, if any, in the account at time of distribution."

Courts throughout the country have arrived at different conclusions in respect to the distribution of commingled money in a common account. There is authority which holds that a claimant whose money was last deposited should be permitted to withdraw from the fund first, and so on, in inverse order of deposit, until the fund is exhausted. The so-called *Clayton's case*, 1 Mer., 572, has been cited as authority in some areas. See Professor Scott's article in 27 Harvard Law Review, at page 130.

In Scott's authoritative work on trusts (IV Scott on Trusts [2d Ed.], 3315 *et seq.*, Section 519) may be found the following discussion:

100

*"Mingling money of several persons.* Where a wrongdoer commingles the money of two or more persons without contributing any money of his own, the claimants have an interest in the mingled fund in proportion to their contributions to the fund. If the fund remains intact, each of them will receive reimbursement in full out of the fund although the wrongdoer is insolvent. It is immaterial whether they claim a lien upon the fund or a constructive trust."

(Under these circumstances, the claimants have priority over general creditors of the wrongdoer.)

Proceeding now to a situation such as we have in the instant case, when the wrongdoer, Gerberich, deposited Gibbs' money in a bank account; wrongfully withdrew some of it, and then deposited Harris' money in the same account; again wrongfully withdrew from the account, and then deposited Hewit's money in the account, and then wrongfully withdrew from the commingled account; the American Law Institute, in the Restatement of the Law of Restitution, 859, Section 213, Chapter 13, pronounces the following rule:

"(1) Except as stated in Subsection (2), where a person wrongfully mingles money of two or more persons, each of them is entitled to share in the mingled fund * * * in such proportion as his money bore to the whole amount of the fund."

(Subsection 2, to which reference is made above, does not affect the rule under the facts of this case.)

Under this general rule, the specialists who prepared the text for the Restatement make the following statements, and illustrations, in Section 213 c, page 861 *et seq.*:

*"Effect of withdrawals from mingled fund.* Where a person wrongfully mingles money of two or more persons and subsequently wrongfully withdraws and dissipates a part of the money, the claimants are entitled to share the balance proportionately. This is true where the wrongdoer deposits the money of two or more persons in a single bank account and subsequently makes withdrawals which he dissipates. It is immaterial in what order the deposits were made, since there is no inference that the money first deposited is the money first withdrawn * * *."

"Where money of some claimants is deposited and withdrawals are made and subsequently deposits are made of the

money of others, the amount to which the earlier claimants are entitled is reduced by such withdrawals.''

(These circumstances parallel the facts in the case before us.)

''*Illustrations.*

''5. A wrongfully takes $5000 belonging to B and deposits it in a bank. A draws out and dissipates $2000. A deposits $5000 belonging to C in the same account. A draws out and dissipates $4000. Of the balance of $4000 B is entitled to three-eights or $1500, and C is entitled to five-eights or $2500.

''6. The facts are as stated in Illustration 5, except that A subsequently deposits $5000 belonging to D, and subsequently draws out and dissipates $4500. Of the balance of $4500 B is entitled to three-eighteenths or $750, C is entitled to five-eighteenths or $1250, and D is entitled to ten-eighteenths or $2500.''

In our research of the legal question involved, we find no authorities in Ohio which pass upon the factual situation presented in the case before us. We therefore rule that the formula adopted in the Restatement of the Law quoted above must rule the instant case, and we adopt that formula as the rule in this state.

In our own words, we are saying that where money of claimants is deposited and wrongful withdrawals are made, and subsequently deposits are made of the money of others, followed by wrongful withdrawals from those deposits, the amount to which the earlier claimants were entitled before the subsequent deposits is further reduced by the subsequent withdrawals. This is because the percentage in the total amount of the bank account which goes to each earlier claimant is reduced by the later dissipation, because when funds of persons are mingled in a bank deposit account the funds acquire a proportionate relationship, and upon subsequent deposits and withdrawals of the funds of others, the funds of the original claimants retain the original proportionate relationship among themselves, but are reduced proportionately as to the whole amount by sharing with the later claimants.

The judgment rendered by the trial court is not in accordance with the rule of law that we have established. It will, therefore, in respect to the allocation of the commingled funds

or bank credits, be modified to comply with this rule. In other respects, the judgment will be affirmed when new balances have been calculated.

Judgment modified, and the cause is hereby remanded to the Court of Common Pleas to modify its judgment not inconsistent with the opinion above.

*Judgment accordingly.*

HUNSICKER, P. J., and STEVENS, J., concur.