OPINION
Plaintiff-appellant Lawyers Title Insurance Corporation appeals from the September 25, 2001, and October 8, 2001, Entries of the Delaware County Court of Common Pleas ordering the disbursement of funds held in a Receiver's account.
 STATEMENT OF THE FACTS AND CASE
On February 23, 2001, appellee Ohio Bar Title Insurance Company filed a Verified Complaint in the Delaware County Court of Common Pleas (Case No. 01-CVH-02-098) against appellees Midwest Title Agency, Inc., and Gloria J. Long nka Gloria J. Long Wozniak, among others. Appellee Ohio Bar Title had appointed appellee Midwest Title and appellee Gloria J. Long Wozniak as its "limited agent" for the purpose of issuing title insurance policies. Appellee Ohio Bar Title Insurance Company, in its Verified Complaint, specifically alleged that such appellees had converted escrow funds for their personal use, thereby allowing shortages in escrow accounts. On the same date, appellee Ohio Bar Title Insurance Company filed a Motion for the Appointment of a Receiver.
Pursuant to a Temporary Restraining Order filed on February 23, 2001, accounts maintained by appellee Midwest Title Agency or appellee Gloria Long were frozen by the trial court. As memorialized in a Journal Entry filed on March 1, 2001, the trial court appointed Reg Martin as Receiver.
Thereafter, on April 4, 2001, FirstMerit Bank, N.A. filed a complaint against appellee Gloria J. Long nka Gloria J. Long Wozniak, among others, in the Delaware County Court of Common Pleas (Case No. 01-CVH-04-178). In its complaint, FirstMerit alleged that such appellee and Michael D. Wozniak owned specified real property located in Delaware County, Ohio, that First Merit had obtained a judgment against them, and that FirstMerit was the holder of an open-end mortgage on such property which provided for the appointment of a Receiver. Pursuant to a Judgment Entry filed on April 5, 2001, Reg Martin was appointed to act as Receiver of the subject real property. Subsequently, as memorialized in a May 11, 2001, Entry, Case Nos. 01-CVH-02-098 and 01-CVH-04-178 were consolidated by the trial court.
On June 22, 2001, Reg Martin, the Receiver, filed a "Receiver's Report and Request for Instructions". In his report, the Receiver stated, in part, as follows:
 Your receiver proposes to the court a preliminary distribution of certain trust funds received by the estate which were never processed. Investigation has revealed that in the case of 16 loan situations, funds were received from lending institutions on behalf of borrowers near or after the time of the restraint on the corporation bank accounts and the appointment of the receiver. In these cases, no closings were held and no funds disbursed. The specific cases are described on Schedule A attached hereto.
The Receiver, in his report, further asked the trial court to determine whether escrowed or trust funds "were held as separate trusts for customers using Lawyer Title and Ohio Bar Title, or whether the escrow funds consisted of one trust fund account held in several different bank accounts."[1]
After its Motion to Intervene was filed in the trial court, appellant Lawyers Title Insurance, which had not previously submitted a claim to the Receiver, filed a complaint on July 17, 2001. Thereafter, a hearing on the Receiver's Report was held on September 7, 2001. At the hearing, Reg Martin, the Receiver, testified that he had two accounts. Whereas one account contained approximately $1.112 million, the other contained approximately $62,000.00 and was used as the Receiver's operational fund. Martin testified that "[t]he larger account we rolled over money from the trust — what would be labeled prior by Midwest Title IOTA accounts, and we rolled those into one account that we segregated". Transcript at 14. According to Martin, there was a vast amount of commingling of the funds in trust accounts.
After gathering and evaluating all claims, Martin estimated that the claims exceeded $4,000,000.00[2] while the amount available for distribution was under $2,000,000.00. Martin further testified that he wanted to disburse the $1.112 million contained in the one account to 16 claimants listed on Schedule A. The following is an excerpt from the September 7 hearing:
 THE COURT: And just so I understand, on the 16 you are talking about, those are ones that once the case was filed, once the stay is put on and accounts are frozen, those are loans that are in transition?
 THE WITNESS: It goes back. There's a slight twist to this that goes back a little earlier. Those 16 were — let me, if I can look at my paperwork here — if you look at Exhibit A, you will see dates on the far left-hand corner — on the far left-hand column. Those were dates that those loans, the paperwork on those loans came in to be reviewed and handled in the normal transaction.
THE COURT: So they came into Midwest?
 MR. SCHULZE: They came into Midwest, like the first two on 2-20 and everything after that was 2-23. In the evening of 2-23 at approximately 4:59, Ohio Bar Title filed for a restraining order on all of the bank accounts. However, since that was a Friday at 4:59, that restraining order did not get processed until Monday. And by the time the banks got word of it and were advised to take action properly, that was then Tuesday or Wednesday morning.
THE COURT: So that was —
MR. SCHULZE: Yes.
THE COURT: — 4:59 ON A Friday?
MR. SCHULZE: Yes, sir.
THE COURT: See, old habits die hard.
MR. SCHULZE: Yes, sir.
 THE WITNESS: So from that standpoint, monies, these funds continued to come in after, except for the top two, which the loans never closed. They were — the money was in, but the loans never closed at all. They just, the people found another lender, okay; the loans never closed.
 All the rest of them, you can say the loans closed, but the transactions didn't close because the disbursements were never made on those loans because they went past the rescission period and there was a restraining order on the accounts. And, yet again, all of those monies were wired in after the restraining order at 4:59, even though the banks were not aware of it.
 There was one on page two of the schedule that is a separate issue. And that is the very last one that goes back to 11-29 of 2000. That was the $87,000.00 one, where the loan was closed but canceled after the signing, and the monies were never disbursed and continue to sit in the accounts for that period. But that loan was closed. The money should have been returned because there was no disbursement. We felt that would fit into the above category because it was a loan that never closed and funds would never even be proposed to be disbursed. It should have all been returned.
Transcript at 21-23.
After the hearing, the parties filed post-hearing briefs. Thereafter, pursuant to an Entry filed on September 25, 2001, the trial court held as follows:
 Upon the evidence submitted and the testimony of Reg Martin, the appointed Receiver herein, and the Court having heard statements and arguments by those in attendance, it is the Court's opinion and ruling that the recommendation of the Receiver herein should be adopted and the funds distributed as per the Receiver's recommendation.
 It is therefore, ORDERED, ADJUDGED AND DECREED that the Receiver be, and hereby is, authorized and ordered to disburse the funds as more fully set forth in his motion and recommendation filed herein. By way of summary, the Receiver shall disburse the funds held in his "special account" as opposed to his "administrative account" to those financial institutions who advanced funds for specific closings, and which closing never took place or which the funds were not disbursed due to rescission of the transaction by the party seeking to obtain the financing.
Appellant Lawyers Title filed a Notice of Appeal of such decision on October 2, 2001(Case No. 01CAE10-046). Thereafter, on October 8, 2001, the trial court issued a Revised Entry which, in addition to the above, found that funds held in the Receiver's "special account" consisted of funds deposited by Midwest Title for the "purpose of closing loans and the funds received were intermixed in various accounts". The trial court further ordered in its October 8, 2001, entry that the Receiver was to "consider the escrow or trust funds of Defendant company (Midwest) as a single trust account rather than separate funds". On November 7, 2001, appellant Lawyers Title filed a Notice of Appeal of such decision (Case No. 01CAE11-059). Pursuant to a Judgment Entry filed on December 26, 2001, this Court consolidated the two appeals.
Appellant Lawyers Title now raises the following assignments of error:
 THE COURT ERRED IN FAILING TO ENFORCE THE APPLICABLE BURDEN OF PROOF FOR ESTABLISHING A RIGHT TO DISTRIBUTION OF FUNDS HELD BY THE RECEIVER AS TO THE CLAIMANTS COMPRISING SCHEDULE A OF THE RECEIVER'S REPORT.
 THE COURT ERRED IN AUTHORIZING THE DISTRIBUTION OF FUNDS HELD BY THE RECEIVER TO CLAIMANTS THAT HAVE NOT SATISFIED THE APPLICABLE BURDEN OF PROOF NECESSARY FOR SUCH DISTRIBUTION.
 THE COURT ERRED IN ITS DETERMINATION THAT THE CLAIMANTS COMPRISING SCHEDULE A OF THE RECEIVER'S REPORT WERE ENTITLED TO DISTRIBUTION OF FUNDS IDENTIFIED AND TRACED BY THE APPELLANT AS BELONGING TO IT.
 THE COURT ERRED IN ORDERING THAT ALL ACCOUNTS ADMINISTERED BY MIDWEST TITLE AGENCY, INC. BE CONSOLIDATED INTO ONE RECEIVERSHIP TRUST ACCOUNT FOR DISTRIBUTION TO ALL CLAIMANTS IN THIS PROCEEDING.
 THE COURT ERRED IN RELYING UPON THE RECEIVER'S CLASSIFICATION OF CLAIMANTS AND/OR CLAIMS AND DETERMINING THAT THE CLAIM OF APPELLANT WAS SECONDARY IN NATURE TO THE CLAIMS COMPRISING SCHEDULE A OF THE RECEIVER'S REPORT.
 THE COURT ERRED IN DETERMINING THAT DISBURSEMENT OF DEPOSITS COMPRISING THE CLAIM OF APPELLANT HAD OCCURRED;
 THE COURT ERRED IN FAILING TO ORDER THAT CLAIMANTS ENTITLED TO DISTRIBUTION FROM A PARTICULAR, MINGLED FUND SHARE IN SUCH FUND IN SUCH PROPORTION AS THEIR RESPECTIVE MONEY BORE TO THE WHOLE AMOUNT OF THE FUND; AND THE COURT ERRED IN THAT ITS DECISION IS ARBITRARY, CAPRICIOUS AND CONTRARY TO LAW.
 Appellant has failed to comply with App.R. 16(A)(7) by separatelyarguing each assignment of error. Rather appellant has addressedhis assignments of error under the following arguments:
 I. APPELLANT IS ENTITLED TO DISTRIBUTION OF, AND MAINTAINS A PRIORITY CLAIM WITH RESPECT TO, FUNDS COMPRISING THE CLEVELAND ESCROW ACCOUNT, BECAUSE APPELLANT TRACED ALL DEPOSITS COMPRISING ITS CLAIM INTO SUCH ACCOUNT, AND ITS TITLE THERETO HAS BEEN ESTABLISHED AND ACKNOWLEDGED BEFORE THE TRIAL COURT.
 II. TO THE EXTENT MORE THAN ONE CLAIMANT SATISFIED THE BURDEN OF PROOF FOR DISBURSEMENT, DISTRIBUTION TO EACH SUCH CLAIMANT OF A MINGLED FUND SHOULD BE IN SUCH PROPORTION AS EACH SUCH CLAIMANT'S MONEY BORE TO THE WHOLE AMOUNT OF SAID FUND.
 III. IN DETERMINING WHETHER DISBURSEMENT OCCURRED, THERE IS NO DIFFERENCE BETWEEN THE STATUS OF APPELLANT'S DEPOSITS AND THOSE OF THE SCHEDULE A CLAIMANTS, AND THE SCHEDULE A CLAIMANT SHOULD NOT BE GRANTED PRIORITY OVER APPELLANT.
We shall do likewise.
This case comes to us on the accelerated calender. App.R. 11.1, which governs accelerated calender cases, provides, in pertinent part:
 (E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11. 1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form.
This appeal shall be considered in accordance with the aforementioned rule.
 I
Appellant, in its first argument, claims priority to the funds comprising the "Cleveland Escrow Account"[3] since it "presented evidence that each of the deposits comprising its claim was received into the Cleveland Escrow Account, . . ." In short, appellant takes issue with the trial court's conclusion that the money in the receivership, including the money in the Cleveland Escrow Account, should be considered as one single trust account rather than separate accounts. According to appellant, the Cleveland Escrow Account "should not be incorporated into a general or `special account' for distribution to all creditors but rather should be kept separate and apart for distribution, on a proportionate basis, to Lawyers Title. . .".
When the funds in accounts held by a Receiver have been commingled so that the funds can no longer be traced, the funds must be considered as one account. See Gibbs v. Geberich (1964), 1 Ohio App.2d 93.
At the September 7, 2001, hearing in this matter, the Receiver testified as follows when asked whether the funds held by appellee Midwest Title were kept in separate trust entities or whether they were commingled:
 The funds were in separate bank accounts, but there was a vast amount of commingling between these bank accounts. And it started before for a period that dates back to when there was — we have gone to, like I said, approximately 30 accounts; monies were continually processed between bank accounts and records were unable to be found that would support these transfers. But there were large numbers of transactions that would show that there was a great deal of intermingling. Also, monies came out of these accounts, not only internally in the company, but also were taken out for personal use.
Transcript of September 7, 2001, hearing at 16-17. (Emphasis added.) The Receiver, who was the only person to testify at the September 7, 2001, hearing, further testified that appellees' accounts should be commingled when determining how distribution should be made to the claimants. Based on the foregoing, the funds in the Cleveland Escrow account would be commingled with all other accounts held by appellees.
Accordingly, appellant's first argument is overruled.
 II
Appellant, in its second argument, challenges the trial court's distribution of the commingled funds held by the Receiver. According to appellant, "[i]f other claimants [other than appellant] are successful in establishing title and tracing funds to the Cleveland Escrow Account, then distribution of such commingled funds should occur pursuant to the method established by the Restatement of the Law".
The Restatement of the Law of Restitution, 859, Section 213, Chapter 13, as set forth in Gibbs, supra., provides, in relevant part, as follows:
 `(1) Except as stated in Subsection (2), where a person wrongfully mingles money of two or more persons, each of them is entitled to share in the mingled fund * * * * *
 in such proportion as his money bore to the whole amount of the fund.'
As noted by the court, in Gibbs,:
 Under this general rule, the specialists who prepared the text for the Restatement make the following statements, and illustrations, in Section 213c, page 861 et seq.:
 `Effect of withdrawals from mingled fund. Where a person wrongfully mingles money of two or more persons and subsequently wrongfully withdraws and dissipates a part of the money, the claimants are entitled to share the balance proportionately. This is true where the wrongdoer deposits the money of two or more persons in a single bank account and subsequently makes withdrawals which he dissipates. It is immaterial in what order the deposits were made, since there is no inference that the money first deposited is the money first withdrawn * * *.'
 `Where money of some claimants is deposited and withdrawals are made and subsequently deposits are made of the money of others, the amount to which the earlier claimants are entitled is reduced by such withdrawals .'. .
 `Illustrations.
 `5. A wrongfully takes $5000 belonging to B and deposits it in a bank. A draws out and dissipates $2000. A deposits $5000 belonging to C in the same account. A draws out and dissipates $4000. Of the balance of $4000 B is entitled to three-eights or $1500, and C is entitled to five-eights or $2500.
 `6. The facts are as stated in Illustration 5, except that A subsequently deposits $5000 belonging to D, and subsequently draws out and dissipates $4500. Of the balance of $4500 B is entitled to three-eighteenths or $750, C is entitled to five-eighteenths or $1250, and D is entitled to ten-eighteenths or $2500.'
 Gibbs, supra., at 100-101.
However, assuming, arguendo, that distribution of the Receivership funds at issue was not in accordance with the formula set forth in the Restatement of Restitution, we find that appellant's argument still must fail. A claimant seeking priority over others, with respect to funds held by a Receiver, has the burden of establishing his title and must definitely trace something of value which belonged to him into the Receiver's possession. Hoffman v. Rauch (1937), 300 U.S. 255, 257.
At the September 7, 2001, hearing in this matter, appellant failed to establish that it had priority to the funds held by the Receiver under the formula set forth in the Restatement. Appellant, in order to demonstrate its priority to the funds, had the burden of establishing its title to the same and had to "definitely trace something of value" which belonged to it. See Hoffman, supra. However, at the September 7, 2001, hearing, appellant failed to establish that the $800,000.00 comprising its claim was included within the funds held by the Receiver. At such hearing, appellant never provided the trial court with evidence identifying the deposits comprising its claim. In other words, while appellant, through the Receiver's testimony, may have established that it had a claim for $800,000.00 of the $4,000,000.00 in total claims, the appellant failed to prove that it had a claim for all or any part of its $800,000.00 from the less than two million dollars actually remaining. The appellant presented no evidence, no documentation, no witnesses to establish when its monies came into Midwest and when monies were disbursed from Midwest. While appellant supports its claims to the funds in the Receivership by citing to its post-hearing brief, which was filed on September 14, 2001, and the unauthenticated attachments to the same, pleadings are not evidence. Farmers Prod. Credit Assn. of Ashland v.Stoll (1987), 37 Ohio App.3d 76, 77, citing Hocking Valley RR. Co. v.Helber (1915), 91 Ohio St. 231, paragraph three of the syllabus. It follows, therefore, that attachments to pleadings are, not evidence. SeeState ex rel. Benesch, Friedlander, Coplan Arnoff L.L.P. v. Rossford
(2000) 140 Ohio App.3d 149, fn 2.
Since appellant, therefore, failed to meet its burden of establishing title to the funds held by the receivership, appellant's second argument is overruled.
 III
Appellant, in its third argument for consideration, asserts that, the Receiver, in his report, failed to acknowledge that, while checks were drawn against Lawyers Title deposits, "deposits comprising the claims of Lawyers Title were never disbursed" since the drawee bank refused to accept or honor the same. For such reason, appellant argues that there is no difference between the status of appellant's deposits and those of the Schedule A claimants and appellant, therefore, is "entitled to equal priority with the Schedule A claimants."
Assuming, arguendo, that appellant is correct, appellant's argument is not dispositive, since as discussed above, appellant failed to meet its burden of establishing that it was entitled to any of the funds held by the Receiver.
Appellant's third argument is overruled.
Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
By EDWARDS, J. GWIN, P.J. concurs FARMER, J. dissents
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs to appellant.
[1] Appellee Midwest Title served as agent of both Ohio Bar Title and Lawyers Title.
[2] At the September 7, 2001, hearing, the Receiver testified that the $4,000,000.00 in claims included appellant's $800,000.00 claim.
[3] The "Cleveland Escrow Agent" held money in escrow for Lawyers Title.
Delaware County, App. Nos. 01CA-E-10-046 -1CA-E-10-059 Dissenting Opinion